FILED
4/13/15 2:03 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| THOMAS J. NEE, *Debtor* | : : : | Case No. 14-22944-TPA |
| | | Chapter 13 |
| THOMAS J. NEE, *Plaintiff* | : : : | Adv. No. 14-2244-TPA |
| v. | : : | Related to Doc. Nos. 13, 16, 26 |
| STERLING ROSS & ASSOCIATES, LLC and JARED GALLERIA of JEWELERS, *Defendants* | : : : | |

*Appearances:* Brian C. Thompson, Esq., for the Debtor/Plaintiff
Sterling Ross & Associates, LLC, no appearance
Jared Galleria of Jewelers, no appearance

## MEMORANDUM OPINION

On January 15, 2015, the Debtor filed an *Amended Complaint for: I. Violation of the Automatic Stay Under 11 U.S.C. Section 362, II. Contempt of Court, III. Violation of the Pennsylvania Fair Credit Extension Uniformity Act, and IV. Violation of the Fair Debt Collection Practices Act* ("Amended Complaint") at Doc. No. 13.[1] Named as Defendants in the *Amended Complaint* are Jared Galleria of Jewelers ("Jared") and Sterling Ross and Associates, LLC ("Sterling").

The docket shows that service of the *Amended Complaint* and Summons was made

---

[1] The Court has jurisdiction over this matter pursuant to *28 U.S.C. §§ 157(a)* and *1334*. The claim of violation of the automatic stay is a core proceeding pursuant to *28 U.S.C. §157(b)(2)(A)* and the statutory fair debt claims are core proceedings pursuant to *§157(b)(2)(O)*.

1

on both Defendants by U.S. mail on January 19, 2015. Neither of the Defendants responded in any manner and the Debtor then filed a ***Motion for Default Judgment*** ("Motion") on February 18, 2015. See Doc. No. 16. The Court set a hearing date and response deadline on the *Motion*. Once again, neither Defendant responded and the Debtor filed a certificate of no objection on March 2, 2015. An initial hearing on the *Motion* was held on March 4, 2015, following which the Court issued two orders on March 9, 2015. The first order effectively granted the *Motion* in part by finding that Jared and Sterling had violated the automatic stay. Doc. No. 25. The second order scheduled an evidentiary hearing for April 6th for the purposes of determining damages. Doc. No. 26. Copies of both of those orders were served on the two Defendants by the Debtor.

The Debtor and his attorney appeared at the evidentiary hearing, but once again neither Defendant appeared or responded in any way. Through a combination of an offer of proof presented by the Debtor's attorney, and attested to by the Debtor, as well as some direct testimony given by the Debtor, a record was established at the hearing. That record, together with the factual allegations in the unrebutted *Amended Complaint*,[2] provide a fairly clear picture of the relevant events.

The Debtor filed a voluntary Chapter 13 bankruptcy petition on July 22, 2014. Schedule F lists Jared as an unsecured creditor. Jared was also listed on the mailing matrix filed by the Debtor, and so would have received notices in the case. On September 23, 2014, the Debtor

---

[2] The default in answering or otherwise responding by the Defendants allows the Court to accept the factual allegations in the *Amended Complaint* as true, except those relating to the amount of damages. *See, e.g., DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir. 2005). Legal issues remain subject to adjudication. *Id*.

received an e-mail from Sterling which identified a debt, Account No. 321270742, with a balance due of $1,089.05 that the Debtor allegedly owed to Jared. *See Amended Complaint* at ¶9 and Exhibit A. The e-mail stated that Sterling had "assumed the responsibility of obtaining a final decision regarding the above-mentioned account." The *Amended Complaint* alleges that Sterling was acting as the agent of Jared with respect to this debt. *See Amended Complaint* at ¶16. Between the content of the e-mail itself, and the factual allegations of the *Amended Complaint* to which the Defendants have never responded, the Court concludes that Sterling was acting as the agent of Jared in this matter.

After identifying the debt, the Sterling e-mail demands immediate payment and threatens that "further action" will be taken against the Debtor "if necessary." The next day someone from Sterling made a dunning and verbally abusive telephone call to the Debtor, telling him that if the debt was not paid an application for an arrest warrant against him would be filed. The Debtor informed the caller that he was in bankruptcy, but that had no effect. The Debtor testified at the April 6th that there were "three or four" such calls over the course of a couple of days, all of a similar tenor. During one of the calls the person from Sterling even stated that he knew who the Debtor's attorney was, and the judge assigned to the case, but he still demanded payment. According to the *Amended Complaint*, the last demand for payment came on or about November 15, 2014.[3]

The e-mail and telephone calls from Sterling were clearly willful violations of the automatic stay. *See 11 U.S.C. §362(a)(6), 362(k)*. In addition, Sterling was acting as a "debt

---

[3] The Debtor filed this adversary proceeding on November 19, 2014.

collector" in this matter and the telephone calls it engaged in were violations of the Pennsylvania *Fair Credit Extension Uniformity Act* ("FCEUA"), *73 P.S. §2270.1*, *et seq.*, and the Federal *Fair Debt Collection Practices Act* ("FDCPA"), *15 U.S.C. §1692, et seq. See 73 P.S. §2270.4(a)* (incorporating by reference in FCEUA the FDCPA standards for debt collectors), and *15 U.S.C. §1692e(4)* (debt collectors may not make the false representation that nonpayment of the debt will result in arrest or imprisonment). The Debtor is seeking all available damage remedies.[4]

As a first item of damage, the Debtor submitted evidence that attorney fees in the amount of $2,178 were incurred in pursuing this adversary proceeding. The Court has reviewed the time entries and found them to be reasonable and necessary. Attorney fees can be awarded for stay violations, *11 U.S.C. §362(k)*, as well as under both the FCEUA, *see 73 P.S. §2270.5(a)* and *73 P.S. §201-9.2(a)* and the FDCPA, *see 15 U.S.C. §1692k(a)(3)*. The Court will award attorney fees in the amount sought.

As a second item of damage, the Debtor seeks actual damages for the emotional distress he alleges to have suffered as a result of Sterling's actions. The Debtor testified convincingly to having lost sleep and incurred significant anxiety as a result of what happened,

---

[4] The *Amended Complaint* also characterizes the conduct in question as "contempt of court." *See Amended Complaint*, Count II, Paragraphs 21-27. The statutory remedy provision for violation of the automatic stay, currently found at *11U.S.C. §362(k)*, is essentially a codification of the contempt remedy for stay violations that was employed prior to the remedy provision being added to the Bankruptcy Code in 1984. *See University Medical Center v. Sullivan*, 125 B.R. 121, 126-27 (E.D. Pa. 1991) (noting that since the stay remedy provision was added to the Code practitioners and courts have continued to use the rhetoric of contempt when seeking damages for automatic stay violations). The Debtor has not argued that the remedies that might be available under the rubric of contempt are any broader than the remedies under *Section 362(k)*, hence the Court views Count II of the *Amended Complaint* as redundant and need not discuss it any further.

particularly the threat to have a warrant issued for his arrest. He is a police officer and he testified that if such a warrant had actually been issued, as Sterling was threatening, he would have lost his job even though such a warrant may have been groundless. A threat to one's livelihood is a serious matter. The Court finds that the Debtor did suffer mental and emotional distress as a result of Sterling's misconduct.

Emotional distress damages are potentially available for a violation of the automatic stay. *See In re Lansaw*, 2015 WL 224093 *7 (Bankr. W.D. Pa. 2015) (citing *In re Wingard*, 382 B.R. 892 (Bankr. W.D. Pa. 2008). The Debtor did not provide any medical testimony or other corroborating extrinsic evidence to substantiate the mental distress he experienced. However, if the stay violator's conduct was "patently or obviously egregious" then emotional distress injuries may be proven merely by credible debtor testimony alone, without resort to extrinsic corroborating evidence. *Id*. The Court finds that the conduct of Sterling in this case was sufficiently egregious such that Debtor's credible testimony standing alone was enough to justify an award of damages for emotional distress. Considering all relevant factors, the Court will award the Debtor damages of $1,500 for the emotional distress he experienced as a result of the violation of the automatic stay.[5]

---

[5] Damages for emotional distress are not available under the FCEUA. *See Star v. Rosenthal*, 884 F. Supp. 2d 319, 331 n. 8 (E.D. Pa. 2012). Damages for emotional distress are potentially available as actual damages under the FDCPA, but "absent any indication that mental health treatment was needed or that the emotional distress somehow concretely affected the plaintiff's personal or professional life, actual damages for emotional distress should be minimal." *Manopla v. Bryant, Hodge and Associates, LLC*, 2014 WL 793555 (D.N.J. 2014). Given that, the Court elects not to rely on the FDCPA as the basis for its award of actual damages for emotional distress.

A third potential item of damage is the statutory damage provided for in the FCEUA and the FDCPA.  In evaluating this item, the Court is mindful that remedies available under the FCEUA are not to be cumulative with the FDCPA, and debt collectors who violate both the FCEUA and the FDCPA are thus not to incur cumulative penalties.  *See 73 P.S. §2270.5(c)*.  The Court must therefore determine what statutory damages would be available under each of the two statutes and arrive at a statutory damage amount that does not offend this non-cumulative principle.

A violation of the FCEUA is deemed to be also a violation of the Pennsylvania *Unfair Trade Practices and Consumer Protection Law* ("UTP"), *73 P.S. §201-1, et seq.*, and the remedies under the UTP are thus available to a person harmed by the FCEUA violation.  Pursuant to *73 P.S. §201-9.2(a)* a person aggrieved by a UTP violation may "recover actual damages or one hundred dollars ($100), whichever is greater."  The court also has the discretion to award up to three times the actual damages sustained.  In the present case, the award to the Debtor under the FCEUA would be the statutory damage of $100, because that is greater than the actual damages of $0 which are available under the statute.  *See* footnote 5, *supra*.  It is unclear whether that amount could be trebled, but even if so, the maximum recovery for the Debtor under the FCEUA for statutory damages would be $300.

Under the FDCPA, regardless whether any actual damages are awarded, a court is permitted to award statutory damages of up to $1000.  *See 15 U.S.C. §1692k(a)(2)(A)*.  This is a "per lawsuit" limit, not a "per violation" limit.  *Manopla, supra*.  Whether such statutory damage should be allowed, and if so in what amount, is committed to the Court's discretion.  *Id.* In the present case, Sterling's violation was egregious, and not simply a technical one.  Baseless and

6

abusive threats to have an arrest warrant issued on a vulnerable debtor should not be tolerated. Even when told of the Debtor's bankruptcy filing the threats persisted. Under the facts presented, the Court finds that the maximum $1000 in statutory damage available under the FDCPA is appropriate, and as that amount is greater than the maximum of $300 that would be available under the FCEUA, that amount will be awarded.

The final item of potential damage to be considered is punitive damages. Punitive damages are potentially available for a stay violation, *Lansaw supra*, at * 12-13. Punitive damages are not available under the FDCPA, *Desmond v. Phillips & Cohen Associates, Ltd.*, 724 F. Supp. 2d 562 (W.D. Pa. 2010), and they do not appear to be available under the FCEUA either, beyond the possibility of treble actual damages. *See Samuel-Bassett v. KIA Motors America, Inc.,* 357 F.3d 392, 401 (3d Cir. 2004). Whether or not to award punitive damages for a stay violation is discretionary with the Court. *See, e.g., In re Sturman*, 2011 WL 4472412 (S.D.N.Y. 2011) (even where punitive damages might be appropriate, the law is clear that bankruptcy court has considerable discretion in granting or denying punitive damages).

In the present case, the Court finds that Sterling acted with actual knowledge that it was violating the stay, or at least with reckless disregard as to whether it was doing so. An award of punitive damages would therefore be appropriate, but the Court believes that a cautious approach is in order here, given the rather sparse evidence that was presented at the April 6th hearing, particularly the lack of any evidence as to ability to pay. As a result, the Court will award nominal punitive damages in the amount of $500.

To sum up, total damages of $5,178 will be awarded, consisting of the following:

- Attorney fees of $2,178

- Actual damages for violation of the automatic stay of $1,500

- Statutory damages for violation of the FDCPA of $1,000

- Punitive damages of $500 for violation of the automatic stay

One other issue need to be addressed. Although all of the actions complained of by the Debtor here were done by Sterling, the Debtor asks that Jared be held jointly liable on the judgment because Sterling was acting as its agent and Jared was "complicit" with what Sterling was doing. *See Amended Complaint* at ¶¶16, 20. The Court has previously found that Sterling was acting as Jared's agent in this matter. The majority view seems to be that under general principles of agency law a creditor-principal can be held liable for the acts of an agent who willfully violates the automatic stay when those acts are within the scope of the principal-agent relationship. *See In re Theokary,* 444 B.R. 306, 323-24 (Bankr. E.D. Pa. 2011) (citing cases). The Court will follow this majority view and impose joint and several liability on Sterling and Jared.

An appropriate Order follows.

Dated: April 13, 2015

_____
Thomas P. Agresti, Judge
United States Bankruptcy Court

Case administrator to serve:
    Brian Thompson, Esq.
    Debtor